UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CVS PHARMACY, INC., <br><br> Plaintiff, <br><br> v. <br><br> BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.; CHATTEM, INC., and GLAXOSMITHKLINE LLC; <br><br> Defendants. | Case No. 1:24-cv-00128 |

## COMPLAINT

Plaintiff CVS Pharmacy, Inc. ("CVS"), by and through its undersigned counsel, alleges as its complaint against Defendants Boehringer Ingelheim Pharmaceuticals, Inc., Chattem, Inc., and GlaxoSmithKline LLC as follows:

## NATURE OF THIS ACTION

1. As detailed herein, this is an action arising from Defendants' failure to perform their respective defense, hold harmless, and indemnification obligations to CVS in connection with lawsuits arising from CVS's sale of pharmaceutical products manufactured by Defendants.

## PARTIES

2. Plaintiff CVS Pharmacy, Inc. ("CVS" or "Plaintiff") is a Rhode Island corporation with a principal place of business located at One CVS Drive, Woonsocket, Rhode Island 02895.

3. Defendant GlaxoSmithKline LLC, formerly known as SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), is a Delaware limited liability company with its principal place of business located at Five Crescent Drive, Philadelphia, Pennsylvania 19112. The

1

sole member of GSK is GlaxoSmithKline Holdings (Americas) Inc., a Delaware corporation with its principal place of business in Wilmington, Delaware.

4.      Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BI"), is a Delaware corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, Connecticut 06877.

5.      Chattem, Inc. ("Chattem") is a Tennessee corporation with its principal place of business located at 1715 West 38th Street, Chattanooga, Tennessee 37409.

6.      GSK, BI, and Chattem are collectively referred to herein as "Defendants."

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.      Venue in this action is proper in the District of Rhode Island pursuant to 28 U.S.C. § 1391(b)(2) because substantially all of the events and omissions giving rise to CVS's claims occurred in this judicial district.

9.      At all times relevant hereto, CVS operated from its principal place of business in Woonsocket, Rhode Island.

10.     CVS' merchandising and legal departments operated from and conducted negotiations with the Defendants regarding contracts at issue related to the Zantac Products from these headquarters.

11.     All Defendants sold Zantac Products to CVS in the State of Rhode Island.

12.     These Zantac Products were ultimately sold to consumers through CVS stores inside and outside of Rhode Island.

## FACTS

### The Agreements

13. In connection with its purchase and distribution of particular pharmaceutical products manufactured by Defendants, specifically branded prescription and over the counter Zantac products ("the Zantac Products"), CVS entered into agreements with Defendants that require them to, among other things, defend, indemnify and/or hold harmless CVS for claims or litigation arising from the sale of Defendants' Zantac Products.

14. For example, on or about May 25, 1992, and again on December 22, 2000, CVS and GSK entered into a Guarantee which states:

> In consideration of purchases heretofore or hereafter made by CVS … from [GSK], [GSK] agrees, upon receipt of written notice in time for [GSK] to defend the action or take other appropriate measures to
>
> a) indemnify, and hold [CVS] harmless from liability for any claim arising out of [CVS's] sale of any [GSK] product purchased by [CVS] from [GSK], and to
>
> b) assume the responsibility and expense of defending and/or settling any such claim;
>
> provided that [GSK] shall, at its option, retain sole control of all phases of such defense and/or settlement, including, but not limited to, selection of Counsel and terms of settlement; and provided further that [CVS] agrees to cooperate with [GSK] in all reasonable ways in connection with the claim or litigation.

15. As a further example, on or about January 16, 1997, CVS and GSK entered into a Warranty and Indemnification Agreement, which sets forth the terms and conditions pursuant to which GSK will indemnify CVS in connection with CVS' sale of GSK products (the Guarantee and the Warranty and Indemnification Agreement are collectively referred to herein as the "GSK Agreement"), and which states in relevant part:

> [GSK] shall defend, indemnify and hold harmless [CVS], its subsidiaries and their respective officers, directors, employees and agents … against suits for bodily injury or property damages arising from [CVS'] sale of a [GSK] product in which any [CVS Indemnitee] is names as a defendant …

16. As another example, on or about June 5, 2012, CVS and BI entered into a Product Guarantee and Indemnification Agreement (the "BI Agreement") which states:

> …if any claim shall be made against you alleging any trademark, copyright, patent or any other license infringement or any injury and/or damage from the use or purchase of any article shipped by us, [BI] shall indemnify, defend and hold you harmless of and from any and all liability arising by virtue of such claim, including reasonable attorneys' fees, provided that the injury or damage is due solely as a result of a breach of the above products guarantee …

17. Further, on or about July 19, 2007, CVS and Chattem entered into an Indemnification Agreement ("Chattem Agreement") which states:

> Chattem, Inc. … hereby agrees to defend, indemnify and hold harmless … [CVS] … from or are associated with and against any and all liabilities, losses, claims, and/or costs, including reasonable attorneys' fees, which allegedly result from any defect, alleged or real, in any product, fixture, equipment or item, sold or supplied by [Chattem] to [CVS] … This Indemnification Agreement shall cover all products, fixtures and equipment, items and service which [CVS] has purchased from [Chattem] at any time, whether prior to, or after, the date of the execution of this Agreement by either party hereto, and shall survive the termination of the transaction of business between [Chattem] and [CVS].

18. The GSK Agreement, BI Agreement, and Chattem Agreement (collectively, "the Agreements") are valid and enforceable contracts.

19. All conditions to CVS's recovery under the Agreements were satisfied, waived, excused or otherwise inapplicable.

20. Under the terms of the Agreements, Defendants were obligated to defend and/or indemnify CVS with respect to its defense costs incurred in connection with claims and lawsuits arising from the Zantac Products which were manufactured and sold to CVS by Defendants.

## The Underlying Lawsuits and CVS's Demands

21. A number of lawsuits have been filed across the country alleging ingestion of Zantac heartburn medication caused harmful health side effects and economic damages.

22. One such lawsuit is the United States Judicial Panel on Multidistrict Litigation for Zantac (MDL No. 2924) (the "MDL"), which involves more than 2,450 plaintiffs alleging that they developed or had a significantly higher risk of developing various types of cancer or sustained economic loss after ingesting the Zantac Products.

23. CVS and Defendants, among a number of other manufacturers and retailers, are named defendants in the MDL.

24. CVS requested that Defendants provide CVS with a defense in the MDL.

25. Defendants agreed that they owed CVS a defense based upon the terms of the Agreements and their common law obligations, but declined to defend CVS in the MDL and have refused to pay CVS for its defense costs without justification.

26. Summary judgment entered in Defendants' favor in the MDL in December 2022, and multiple appeals are pending in the 11th Circuit (the 11th Cir. Appeals and the "MDL" are collectively referred to as the "Zantac Lawsuits").

27. Following Defendants' rejection of CVS's tenders of defense in the Zantac Lawsuits, and in an effort to conserve costs and realize other benefits, CVS, along with several other retailers, hired outside counsel for representation in the Zantac Lawsuits.

28. Counsel incurred, and continues to incur, legal fees and other costs and expenses in its representation of CVS in the Zantac Lawsuits.

29. CVS has repeatedly requested that Defendants reimburse the defense costs and other legal fees and expenses CVS has incurred in the defense of the Zantac Lawsuits.

30. Although Defendants have each acknowledged the validity and enforceability of the Agreements with CVS, and have likewise each acknowledged their contractual and common law defense and indemnification obligations to CVS, even going so far as to discuss entering into

a defense cost sharing agreement, to date, Defendants have refused to reimburse CVS for any of the costs, fees and expenses incurred in connection with the Zantac Lawsuits.

31. CVS has been harmed by Defendants' refusal to defend and/or reimburse CVS its defense costs, fees and expenses. Specifically, CVS funded its own defense of the Zantac Lawsuits and has managed its own defense counsel. In addition, CVS has incurred, and now continues to incur, legal fees to enforce its contractual and common law rights to reimbursement from Defendants, rights which Defendants acknowledge are valid.

### COUNT I
### Claim for Declaratory Judgment Concerning CVS's Right to Reimbursement for its Defense Costs of the Zantac Lawsuits
(Against GSK, BI and Chattem)

32. CVS hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

33. Despite demand, Defendants failed and refused to reimburse CVS for its defense costs incurred in defending the Zantac Lawsuits, all in breach of the Agreements. An actual and justiciable controversy presently exists between CVS and Defendants with respect to Defendants' total responsibility for loss that CVS has incurred in connection with the Zantac Lawsuits in that: (1) the Zantac Lawsuits fall within the defense and indemnity obligations set forth in each of the Agreements; and (2) Defendants have each wrongly failed and/or refused to provide a defense for the Zantac Lawsuits and/or to reimburse CVS for its complete defense as required by the Agreements and applicable law.

34. Declaratory relief from this Court will terminate some or all of these disputes and controversies.

35. Pursuant to 28 U.S.C. § 2201 *et seq*., CVS is entitled to a declaration by the Court concerning the joint and several obligations of Defendants regarding CVS's entitlement to a

defense and/or reimbursement of its full defense costs, fees and expenses incurred in connection with the Zantac Lawsuits.

## COUNT II
## Breach of Contract
## (Against GSK)

36. CVS hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

37. The GSK Agreements are valid and enforceable contracts.

38. CVS fully performed its material obligations under the GSK Agreements at all relevant times to this action.

39. GSK's failure or refusal to respond in accordance with its contractual obligations to CVS's demands for defense and/or reimbursement of defense costs, fees and expenses incurred in connection with the Zantac Lawsuits constitutes a breach of the GSK Agreements.

40. As a direct and proximate result of GSK's breach, CVS has been deprived of the benefits of the GSK Agreements.

41. As a direct and proximate result of GSK's breach, CVS has suffered, and is continuing to suffer, damages, costs, and other losses and has been or will be damaged in an amount to be proven at trial.

42. GSK's breach of contract has also caused reasonably foreseeable consequential harm to CVS. These consequential damages include, without limitation, attorneys' fees and expenses incurred in the prosecution of this action.

## COUNT III
## Breach of Contract
## (Against BI)

43. CVS hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44. The BI Agreement is a valid and enforceable contract.

45. CVS fully performed its material obligations under the BI Agreement at all relevant times to this action.

46. BI's failure or refusal to respond in accordance with its contractual obligations to CVS's demands for defense and/or reimbursement of defense costs, fees and expenses incurred in connection with the Zantac Lawsuits constitutes a breach of the BI Agreement.

47. As a direct and proximate result of BI's breach, CVS has been deprived of the benefits of the BI Agreement.

48. As a direct and proximate result of BI's breach, CVS has suffered, and is continuing to suffer, damages, costs, and other losses and has been or will be damaged in an amount to be proven at trial.

49. BI's breach of contract has also caused reasonably foreseeable consequential harm to CVS. These consequential damages include, without limitation, attorneys' fees and expenses incurred in the prosecution of this action.

### COUNT IV
### Breach of Contract
### (Against Chattem)

50. CVS hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. The Chattem Agreement is a valid and enforceable contract.

52. CVS fully performed its material obligations under the Chattem Agreement at all relevant times to this action.

53. Chattem's failure or refusal to respond in accordance with its contractual obligations to CVS's demands for defense and/or reimbursement of defense costs, fees and

expenses incurred in connection with the Zantac Lawsuits constitutes a breach of the Chattem Agreement.

54. As a direct and proximate result of Chattem's breach, CVS has been deprived of the benefits of the Chattem Agreement.

55. As a direct and proximate result of Chattem's breach, CVS has suffered, and is continuing to suffer, damages, costs, and other losses and has been or will be damaged in an amount to be proven at trial.

56. Chattem's breach of contract has also caused reasonably foreseeable consequential harm to CVS. These consequential damages include, without limitation, attorneys' fees and expenses incurred in the prosecution of this action.

## COUNT V
## Common Law Indemnity
## (Against GSK, BI and Chattem)

57. CVS hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. Defendants are obligated under the common law to defend, indemnify, and hold harmless CVS from and against damages, claims, and losses incurred by CVS as a result of Defendants' acts or omissions.

59. CVS has incurred, and is continuing to incur, damages, costs, and other losses as a direct and proximate result of the wrongful acts or omissions of Defendants.

60. Defendants are liable to CVS for common law indemnity for all such damage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CVS Pharmacy, Inc. prays for judgment in its favor and against Defendants providing for the following relief:

A. Declaring that Defendants, on an individual basis, each breached their respective duty to reimburse CVS for its defense costs, fees and expenses incurred in connection with the Zantac Lawsuits;

B. Declaring that Defendants, on an individual basis, each have a duty to reimburse CVS for the full amount of its defense costs, fees and expenses incurred in connection with the Zantac Lawsuits;

C. Awarding CVS its attorneys' fees, costs and other expenses incurred in defending the Zantac Lawsuits and all other damages sustained as a result of the breach by Defendants of their duty to reimburse defense costs, together with interest accrued and accruing thereon according to law;

D. Awarding damages in such amount as this Court may determine that CVS has sustained as a result of the breaches by Defendants of their obligations under the Agreements, with interest accrued and accruing thereon according to law;

E. Awarding damages in such amount as this Court may determine that CVS has sustained as a result of the breaches by Defendants of their obligations under common law principles, with interest accrued and accruing thereon according to law;

F. Awarding damages in such amount as this Court may determine that CVS has sustained as a result of the breaches by Defendants of their duties of good faith and fair dealing, with interest accrued and accruing thereon according to law;

G. Awarding CVS interest at the maximum rate per annum on the amounts found to be due and owing to CVS, from the date of breach or wrongful conduct until the date of judgment;

  H.  Awarding CVS attorneys' fees and costs of suit herein incurred;

  I.  Awarding CVS such other and further relief as the Court may deem just and proper.

              Respectfully submitted,

              */s/ Keith J. McCarthy*
              Jeffrey S. Patterson (*pro hac vice pending*)
              jeffrey.patterson@klgates.com
              Lindsay S. Bishop (*pro hac vice pending*)
              lindsay.bishop@klgates.com
              Keith J. McCarthy (Bar No. 9346)
              keith.mccarthy@klgates.com
              K&L Gates LLP
              1 Congress Street, Suite 2900
              Boston, MA 02114
              Tel. 617.261.3100
              Fax 617.261.3175

              *Counsel for CVS Pharmacy, Inc.*

Dated: April 4, 2024